IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:15-CV-163-BR

| | |
|---|---|
| VICKI WOOLARD HACKER, | |
| Plaintiff, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | |

This matter is before the court on the motions to dismiss of defendants CitiFinancial, Inc. f/k/a CitiFinancial Services, Inc. ("CitiFinancial"), CitiFinancial Servicing, LLC ("CitiFinancial Servicing"), J.P. Morgan Mortgage Acquisition Corporation ("J.P. Morgan Mortgage"), Carrington Mortgage Services, LLC ("Carrington"), and Residential Credit Solutions, Inc. ("RCS"). The motions have been fully briefed and are ripe for disposition.

## I. BACKGROUND

On 26 January 2006, plaintiff and her then-spouse Lash Hacker ("Hacker"), acquired real property located in New Bern, North Carolina (the "Property") secured by a Deed of Trust executed by plaintiff and Hacker in favor of CitiFinancial (the "2006 Loan"). (Compl., DE # 1-1, ¶¶ 24, 29.) On 14 January 2008, plaintiff and Hacker executed a second agreement secured by a Deed of Trust executed by plaintiff and Hacker in favor of CitiFinancial (the "2008 Loan"). (Id. ¶¶ 30-32.)

The Property was awarded to plaintiff as part of her divorce from Hacker, which became final in September 2012. (Id. ¶ 38.) During the divorce proceedings, plaintiff was terminated from her employment and starting in June of 2012 became unable to make the monthly payments owed on the 2006 Loan. (Id. ¶ 40.) In July 2012, plaintiff contacted CitiFinancial and applied for the Home Affordable Modification Program ("HAMP") that was established to provide homeowners, in financial need, the opportunity to lower their monthly mortgage payments. (Id. ¶¶ 34-35, 41-42.)

On 16 July 2012, plaintiff received correspondence from CitiFinancial, relating to her application for HAMP modification of the 2006 Loan, informing plaintiff that Troy D. Vaughan ("Vaughan"), an employee of CitiFinancial, was assigned as her Homeowner Support Specialist. (Id. ¶¶ 43-44.) In response to the July 2012 letter from CitiFinancial, and at the request of Vaughan and other representatives of CitiFinancial, plaintiff provided documentation to CitiFinancial in support of her HAMP application. (Id. ¶¶ 45-46.)

On 30 November 2012, plaintiff, in telephone conversations with Vaughan and other representatives of CitiFinancial, was told that "if she immediately made two (2) of the revised monthly payments" under the terms of a proposed modification agreement, "approximately $725.36, the 2006 Loan would be modified." (Id. ¶¶ 51-52.) Plaintiff then verbally authorized CitiFinancial to debit from her bank account the sum of $726.00. (Id. ¶ 53.)

On 1 December 2012, plaintiff and Hacker, whose name was not removed from either of the loans nor the deed to the Property, signed the proposed modification agreement, entitled "Adjustment of Terms Agreement," in favor of CitiFinancial for the 2006 Loan, which was dated 30 November 2012. (Id. ¶ 48.) Plaintiff then transmitted the Adjustment of Terms Agreement to CitiFinancial. (Id. ¶ 50.)

Sometime in late December 2012, plaintiff received a letter from Carrington, entitled "NOTICE OF SALE OF OWNERSHIP OF MORTGAGE LOAN," informing plaintiff that on 20 December 2012, CitiFinancial sold ownership in the 2006 Loan to Wells Fargo Bank, N.A. ("Wells Fargo") and J.P. Morgan Mortgage. (Id. ¶¶ 56-58.) The letter incorrectly lists the original amount of the 2006 Loan. (Id. ¶ 59.) In response to that letter, plaintiff contacted Carrington to make payments on the 2006 Loan, as purportedly modified by the Adjustment of Terms Agreement, but Carrington's representatives refused to recognize that the loan had been modified. (Id. ¶¶ 65-66.) In a letter dated 28 December 2012, CitiFinancial informed plaintiff that her request for modification of the 2006 Loan was not approved because she did not provide CitiFinancial with the documents it requested. (Id. ¶ 62.)

On 8 January 2013, a foreclosure proceeding was commenced before the Clerk of Superior Court for Pamlico County, North Carolina, for the default by plaintiff on the 2006 Loan. (Id. ¶ 74.)

In June 2014, plaintiff received a letter informing her that on 29 May 2014, the 2006 Loan was sold to J.P. Morgan Mortgage and RCS was the agent authorized to act on behalf of J.P. Morgan Mortgage. (Id. ¶¶ 77-78.) RCS assigned Randy Horton ("Horton"), an employee of RCS, as plaintiff's single point of contact regarding the 2006 Loan. (Id. ¶ 83.) RCS representatives informed plaintiff that partial payments for the 2006 Loan would not be accepted. (Id. ¶ 82.)

"On numerous occasions" plaintiff had telephone conversations with Horton and other employees of RCS in which she was "belittled, harassed, and mocked due to her failure to make the required payments on the 2006 Loan." (Id. ¶¶ 84-85.) Plaintiff characterizes the statements by Horton and other employees of RCS as "quite disparaging, foul, and offensive and could be

3

construed as personal attacks at the character and morality of Plaintiff." (Id. ¶ 86.) Representatives of RCS "repeatedly characterized statements made by Plaintiff regarding her dire financial position and circumstances as irrelevant and untruthful." (Id. ¶ 87.) They informed plaintiff that the foreclosure proceeding could be postponed or prolonged, provided she agree to make large payments on the 2006 Loan. (Id. ¶ 88.) Communications with Horton and other representatives of RCS "often left Plaintiff visibly and emotionally upset, causing her severe emotional distress relating to the Property and her financial position." (Id. ¶ 89.)

On 12 November 2014, the Clerk of Court entered an Order Permitting Foreclosure. (Id. ¶ 91.) The Clerk of Court relied upon an Affidavit of Default that was executed by Therese Pfullmann, an Assistant Vice President of RCS, which, according to plaintiff, "contained a multitude of false, misleading and incorrect statements." (Id. ¶ 92.) On 11 February 2015, the Property was sold at a foreclosure sale where J.P. Morgan Mortgage purchased the Property. (Id. ¶ 96.)

Following the foreclosure sale, CitiFinancial and CitiFinancial Servicing informed plaintiff that the 2008 Loan was forgiven. (Id. ¶ 102.) However, on 30 March 2015, plaintiff received a mortgage loan statement issued by CitiFinancial and/or CitiFinancial Servicing, informing her that "the 2008 Loan had been accelerated and was immediately due." (Id. ¶ 103.)

In April 2015, after plaintiff's counsel requested a complete accounting of the 2006 Loan, plaintiff's counsel received a letter from RCS which "identified (i) itself as the current servicer for the 2006 Loan, (ii) [] J.P. Morgan Mortgage as the investor for the 2006 Loan, and (iii) [] Wells Fargo as the owner and the holder of the 2006 Loan." (Id. ¶¶ 104, 108.)

On 2 September 2015, plaintiff filed this action asserting the following claims: (i) violations of the North Carolina Debt Collection Act ("DCA") and North Carolina Unfair and

4

Deceptive Trade Practices Act ("UDTPA") against all defendants; (ii) fraud against CitiFinancial; (iii) violations of the North Carolina Collection Agency Act ("CAA") against CitiFinancial Servicing, Carrington, and RCS; (iv) breach of contract against CitiFinancial, Wells Fargo, J.P. Morgan Mortgage, Carrington, and RCS; (v) intentional infliction of emotional distress against all defendants; (vi) negligence against all defendants; (vii) negligent infliction of emotional distress against all defendants; (viii) negligent misrepresentation against CitiFinancial, CitiFinancial Servicing and RCS; and (ix) declaratory judgment against all defendants. Wells Fargo, with consent of the other defendants, removed the action to this court.[1]  Defendants subsequently responded to the complaint by filing the instant motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

Rule 12(b)(6) permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A 12(b)(6) motion should only be granted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, a complaint that proffers only "a formulaic recitation of the elements of a cause of action" with no "further factual enhancement" is insufficient. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). To survive dismissal, a party must come forward with "enough facts to state a claim to relief that is plausible on its face." Id. at 548. The plausibility standard is met "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Plaintiff has since voluntarily dismissed Wells Fargo as a defendant.

5

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). The court must accept as true all well-pleaded allegations and must draw all reasonable factual inferences in favor of the plaintiff. See Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, the court may consider exhibits that plaintiff attached to, and incorporated by reference in, his complaint. See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 197 (4th Cir. 2009).

**A. The Effect of the Foreclosure Proceeding**

Defendants initially contend that plaintiff's failure to appeal the clerk's Order of Foreclosure pursuant to N.C. Gen. Stat. § 45-21.16(d) bars all of her claims based on the doctrines of collateral estoppel and/or res judicata. Before considering the applicability of those doctrines, it is important to understand the nature of a proceeding under § 45-21.16.

In North Carolina, the Clerk of Superior Court presides over power of sale foreclosure actions under § 45-21.16. See N.C. Gen. Stat. § 45-21.16(d). The clerk "shall authorize" a trustee to proceed with foreclosure if the clerk finds the existence of:

> (i) a valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, (iv) notice to those entitled to such . . ., (v) . . . if the loan is a home loan . . . that . . . pre-foreclosure notice. . . was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by [the mortgagor's military service pursuant to] G.S. 45-21.12A.

Id. Although the borrower cannot raise any equitable defenses to foreclosure in a § 45-21.16 proceeding, she may raise "evidence of legal defenses tending to negate any of the [] findings required." In re Foreclosure of Deed of Trust by Goforth Props., Inc., 432 S.E.2d 855, 859 (N.C. 1993) (citation omitted). A clerk's judgment "will stand as a judgment of the court." In re Atkinson-Clark Canal Co., 67 S.E.2d 276, 278 (N.C. 1951). "Any issue that the clerk decides in a foreclosure proceeding pursuant to N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed

6

and reversed and cannot be relitigated in a subsequent lawsuit." Newton v. Nationstar Mortg. LLC, No. 7:15-CV-16-D, 2015 WL 3413256, at *2 (E.D.N.C. May 26, 2015) (citations omitted). The clerk's findings (or failure to make any finding) may be appealed within 10 days. N.C. Gen. Stat. § 45-21.16(d1).

North Carolina courts routinely recognize the applicability of the doctrine of collateral estoppel to bar relitigation of issues determined in prior foreclosure proceedings. See Funderburk v. J.P. Morgan Chase Bank, N.A., 775 S.E.2d 1, 5-6 (N.C. Ct. App. 2015) (collecting cases). Although some cases refer to the companion doctrine of res judicata as the operative bar, see, e.g., Mixon v. Wells Fargo Home Mortg., No. 3:12-CV-77-RJC-DLH, 2012 WL 1247202, at *3 (Apr. 13, 2012), the court concludes that collateral estoppel is more appropriately considered applicable, if at all, under the circumstances here, see Petri v. Bank of Am., N.A., No. COA13-907, 2014 WL 458095, at *2-3 (N.C. Ct. App. Feb. 4, 2014) (table) (rejecting application of res judicata because no identity of causes of actions between the plaintiff's appeal from clerk's order of foreclosure based on the defendant's failure to satisfy the elements of § 45-21.16(d) and complaint asserting causes of action for injunction to preclude foreclosure, "agency and negligent non[-]disclosure," and violations of UDTPA). Therefore, the court confines its analysis to whether collateral estoppel applies.

> This doctrine
>
> bars the relitigation of specific issues that were actually determined in a prior action. In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action.

Sartin v. Macik, 535 F.3d 284, 287-88 (4th Cir. 2008) (citations omitted).

7

The court examines whether any of the issues the clerk previously determined (i.e., validity of debt, default, trustee's right to foreclose, proper notice was provided, and military service does not bar the sale) are determinative of (and thus fatal to) any of plaintiff's claims. This in turn necessitates an examination of the allegations forming the basis for each claim.

Plaintiff first claims that defendants' conduct violated the DCA (and hence the UDTPA) in multiple respects. To the extent she alleges that CitiFinancial's and CitiFinancial Servicing's acts in regard to the 2008 Loan are the basis for her DCA/UDTPA claim, (see Compl., DE # 1-1, ¶¶ 124, 125, 129), these defendants acknowledge that no issues pertaining to the 2008 Loan were determined in the foreclosure proceeding, (see Mem., DE # 28, at 11 n.3; Reply, DE # 42, at 3), and therefore, plaintiff is not estopped from bringing her claim on that basis.

Additionally, plaintiff alleges that defendants violated the DCA/UDTPA in the course of their collection efforts on the 2006 Loan. For example, she claims that defendants falsely accused her, or threatened to accuse her, of conduct tending to cause disgrace, contempt, or ridicule in attempting to collect the 2006 Loan and threatened to take actions against her which were not permitted by law in the event of nonpayment of the 2006 Loan. (Compl., DE # 1-1, ¶ 125(A), (C).) Issues concerning such alleged collection measures were not litigated (nor could they have been) in the foreclosure proceeding. Therefore, to the extent plaintiff's DCA/UDTPA claim is based on defendants' conduct in attempting to collect on the 2006 Loan, collateral estoppel is not applicable.

However, plaintiff's DCA/UDTPA claim is also premised, in part, on defendants' conduct in the course of the foreclosure proceeding, namely the "[i]nitiation, continuation and completing the Foreclosure Proceeding with the knowledge that the 2006 Loan had been modified." (Compl., DE # 1-1, ¶ 125(D); see also id. ¶ 132.) These allegations implicate

8

plaintiff's default and/or validity of the debt—issues which the clerk determined, and thus, they cannot be relitigated now. The court will allow defendants' motion to dismiss plaintiff's DCA/UDTPA claim to the extent it is based on defendants' conduct in the course of the foreclosure proceeding.

Plaintiff's fraud claim, which is only against CitiFinancial, rises and falls on her contention that CitiFinancial misrepresented the fact that the 2006 Loan would be modified by her execution of the Adjustment of Terms Agreement and her November 2012 payments. Resolution of that claim necessarily depends on the validity of the debt. Again, the clerk decided that issue, and plaintiff is estopped from relitigating it now. Plaintiff's claims for breach of contract and negligent misrepresentation, which are also based on the contention the 2006 Loan was modified and/or its terms misrepresented, fail for the same reason.

Plaintiff's claims for intentional and negligent infliction of emotional distress and negligence, like her DCA/UDTPA claim, are based on allegations concerning defendants' conduct in relation to the 2006 Loan and 2008 Loan. To the extent plaintiff's claims are based on the 2008 Loan, they are not barred by collateral estoppel because, as noted previously, issues pertaining to the 2008 Loan were not litigated in the foreclosure proceeding. Similarly, issues pertaining to the servicing of the 2006 Loan, such as defendants' failure to timely reconcile the loan after transfer of servicing rights from Carrington to RCS and their failure to provide plaintiff with accurate monthly account statements for the loan, (Compl., DE # 1-1, ¶ 204(B), (D)), do not pertain to any of the issues the clerk decided in the foreclosure proceeding. However, plaintiff's claims are based, at least in part, on defendants' alleged failure to recognize the 2006 Loan had been modified by the Adjustment of Terms Agreement; defendants' allegedly wrongful refusal to accept payments thereunder; and defendants' failure to restore the 2006 Loan

9

to non-delinquent status. (Id. ¶ 205(C), (E), (F), (H), (J).) The clerk's finding of default and validity of debt bar claims based on these allegations. In short, collateral estoppel does not bar these claims in their entirety. Rather, they are only barred to the extent these claims rest on the allegation that the 2006 Loan was modified and defendants' refusal to accept payments authorized by the Adjustment of Terms Agreement.

In summary, collateral estoppel bars the following claims: DCA/UDTPA to the extent based on defendants' conduct in the course of the foreclosure proceeding; fraud; breach of contract; negligent misrepresentation; and intentional and negligent infliction of emotional distress and negligence to the extent based on the allegation that the 2006 Loan was modified and defendants' refusal to accept payments authorized by the Adjustment of Terms Agreement.[2]

### B. Plaintiff's Remaining Claims

#### 1. DCA/UDTPA

To state a claim under the DCA, the plaintiff must allege three "threshold" elements: "[f]irst, the obligation owed must be a 'debt'; second, the one owing the obligation must be a 'consumer'; and third, the one trying to collect the obligation must be a 'debt collector.'" Reid v. Ayers, 531 S.E.2d 231, 233 (N.C. Ct. App. 2000) (citing N.C. Gen. Stat. § 75-50(1)-(3)). The plaintiff must also allege the "requirements found in [the UDTPA]: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Id. at 235 (citation omitted). Considering plaintiff's verified factual allegations along with the documents attached to the Complaint, the court finds that plaintiff has adequately stated a claim for violation of DCA/UDTPA to the extent the claim is based on defendants' conduct in attempting to collect on the 2006 and 2008 Loans.

---

[2] The court has not considered the applicability of collateral estoppel to plaintiff's claims for violations of the CAA and for declaratory judgment. Those claims are discussed *infra*.

2. CAA

Plaintiff claims that CitiFinancial Servicing, Carrington, and RCS violated the CAA. These defendants contend they are not a "collection agency" as defined by the CAA.

> "Collection agency" means a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims.

N.C. Gen. Stat. § 58-70-15(a). However, the statute exempts a number of parties from that definition, including:

> [] Banks, trust companies, or bank-owned, controlled or related firms, corporations or associations engaged in accounting, bookkeeping or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping services for creditors[.]

Id. § 58-70-15(c)(2). According to CitiFinancial Servicing, Carrington, and RCS, they each fall within this exemption as loan servicing companies. Plaintiff does not argue otherwise. Accordingly, this claim will be dismissed.

3. Intentional and Negligent Infliction of Emotional Distress

Defendants argue that plaintiff has failed to state a claim for either intentional or negligent infliction of emotional distress because she has failed to allege facts supporting the severe emotional distress element required of both claims. Concerning the emotional distress she allegedly suffered, plaintiff claims that her communications with representatives of RCS "often left her visibility [sic] and emotionally upset, causing her severe emotional distress relating to the Property and her financial position." (Compl., DE # 101, ¶ 89.) She further alleges as a result "particularly" of CitiFinancial's and RCS's conduct, she suffered "mental anguish, which manifested itself physically through sleep loss, headaches, and other physical symptoms." (Id. ¶

11

117.) Further, she contends that she "has incurred severe and grievous mental and emotional suffering, anguish, shock, nervousness, and anxiety." (Id. ¶ 195.)

To state a valid intentional or negligent infliction of emotional distress claim to survive a 12(b)(6) motion, "a plaintiff must allege severe emotional distress, which has been defined as 'any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" Horne v. Cumberland Cty. Hosp. Sys., Inc., 746 S.E.2d 13, 19-20 (N.C. Ct. App. 2013) (citation omitted). Plaintiff's conclusory allegations do not meet this standard, and her emotional distress claims will be dismissed.

4. Negligence

Plaintiff claims all defendants were negligent in a number of respects in the servicing and collection of both the 2006 and 2008 Loans. (See Compl., DE # 1-1, ¶ 204.) The primary issue as to this claim is whether defendants owed plaintiff any duty of care, which is of course required to state a claim for negligence. See Fussell v. N.C. Farm Bureau Mut. Ins. Co., 695 S.E.2d 437, 440 (N.C. 2010) (recognizing that to state a claim for negligence, a plaintiff must allege a legal duty, among other things). Plaintiff acknowledges that the relationship between a borrower and a lender is generally governed by the terms of their agreement. (See Resp., DE # 39, at 26.) See also Synovus Bank v. Coleman, 887 F. Supp. 2d 659, 673 (W.D.N.C. 2012) (dismissing borrower's claims for negligence and gross negligence against lender pursuant to Rule 12(b)(6) because borrower "offered no legal or factual basis on which the Court could impose any duty on the Bank beyond those duties expressly provided for in the parties' loan agreement"); Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 781 S.E.2d 1, 8 (N.C. 2015) ("In an ordinary debtor-

12

creditor transaction, the lender's duties are defined by the loan agreement and do not extend beyond its terms." (citation omitted)).

Plaintiff contends that defendants owed her a duty of care based on "the terms of their agreements, the exercise of ordinary care required by the Uniform Commercial Code ("UCC"), and the general duty of care to act as a reasonably prudent lender." (Resp., DE # 39, at 26-27.) Plaintiff does not point to what terms of the operative agreements created a duty on the part of any defendant, and without some specific reference, the court will not read one into the parties' agreements or assume a duty existed.

As far as the UCC, plaintiff cites to N.C. Gen. Stat. § 25-4-103(a) as an example showing that the UCC "plainly contemplates the exercise of ordinary care by lenders." (Id. at 26 & n.6.) The provision to which plaintiff cites prohibits a bank and its customer from disclaiming by agreement the bank's responsibility for its failure to exercise ordinary care. See N.C. Gen. Stat. § 25-4-101 cmt. 3 ("Article 4 defines rights between parties with respect to bank deposits and collections."), -103(a) ("The effect of the provisions of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its . . . failure to exercise ordinary care . . . ."). Just because a bank might owe its customer a duty to exercise ordinary care does not mean the bank owes that same duty to a person to whom it lends money.

With regard to a general duty of care required of a lender, plaintiff appears to rely exclusively on the case of Hetzel v. JPMorgan Chase Bank, N.A., No. 4:13-CV-236-BO, 2014 WL 7336863 (E.D.N.C. Dec. 22, 2014). In Hetzel, the defendant-bank argued that the plaintiff-borrower's negligence claim based on the misapplication of loan payoff proceeds should be dismissed on the ground of the economic loss doctrine. 2014 WL 7336863, at *7. In rejecting the defendant's argument, the court stated "the Court finds that Chase owed a general duty of

13

due care in its relationship with [the plaintiff]. The wrong that occurred . . . is much less a breach of contract than it is a simple negligence claim." Id. The court declines to read as much into this opinion as plaintiff would have it and will not find a lender owes a borrower a general duty of care.

Finally, plaintiff suggests that the North Carolina Secure and Fair Enforcement Mortgage Licensing ("S.A.F.E.") Act creates a duty of care. (Resp., DE # 39, at 27-28.) The court is hesitant to dismiss plaintiff's negligence claim based on a duty arising under the S.A.F.E. Act without further briefing. In Guyton v. FM Lending Services, Inc., 681 S.E.2d 465, 478 (N.C. Ct. App. 2009), the North Carolina Court of Appeals held that certain provisions of the Mortgage Lending Act ("MLA"), the predecessor to the S.A.F.E. Act, created a duty of care sufficient to support the plaintiffs' claim for negligent misrepresentation. No party discusses Guyton in this regard. The court will deny defendants' motions to dismiss the negligence claim without prejudice to the extent the claim is based on a duty (duties) under the S.A.F.E. Act. Otherwise, the court will dismiss the negligence claim.

### 5. Declaratory Judgment

Plaintiffs seeks declaratory relief under North Carolina's Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, *et seq.*, regarding:

> a. The amount owed under the 2006 Loan, if any;
> b. The amount owed under the 2008 Loan, if any.
> c. The holder of the 2006 Loan; [and]
> d. Whether any of the fees/charges that were assessed or charged by Defendants, against either the 2006 Loan or the 2008 Loan, were waived pursuant to the North Carolina Mortgage Debt Collection and Servicing Act.

(Compl., DE # 1-1, ¶ 222.)

> The North Carolina Uniform Declaratory Judgment Act (the "Act") grants courts the power to declare the "rights, status, and other legal relations" of parties arising under a contract, including questions regarding its construction or validity. N.C.

14

Gen. Stat. §§ 1–253 and 1–254. "A declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Conner v. N.C. Council of State*, 365 N.C. 242, 258, 716 S.E.2d 836, 846, *reh'g denied*, 719 S.E.2d 40 (N.C. 2011) (citation omitted). In order for the Court to have jurisdiction over a claim for declaratory judgment, the complaint must demonstrate "the existence of an actual controversy." *State ex rel. Utilities Comm'n v. Carolina Water Serv., Inc. of N.C.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002) (citations omitted). An "actual controversy" is a "'jurisdictional prerequisite" to proceeding under the Act. *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984) (citation omitted). "It is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief. The Court, however, must "be convinced that the litigation appears to be unavoidable." *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 450, 206 S.E.2d, 178, 189 (1974).

S. Concrete Prod., Inc. v. ARCO Design/Build, Inc., No. 1:11CV194, 2012 WL 1067906, at *4 (W.D.N.C. Mar. 29, 2012).

As J.P. Morgan Mortgage and RCS point out here,[3] the alleged wrongs for which plaintiff seeks declaratory judgment have already occurred. The foreclosure on, and the sale of, the Property has occurred. The other acts of which plaintiff complains have taken place, and there is no threatened future action. On her surviving claims, plaintiff can be awarded damages. Under these circumstances the court finds that declaratory judgment is not appropriate, see Tapia v. U.S. Bank, N.A., 718 F. Supp. 2d 689, 695-96 (E.D. Va. 2010) (dismissing the plaintiffs' claim for declaratory relief under the Declaratory Judgment Act where the foreclosure had already occurred and recognizing that "declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued" (citation and quotation marks omitted), aff'd, 441 F. App'x 166 (4th Cir. 2011) (per curiam), and the court in its discretion declines to render that relief, see Augar v. Augar, 573 S.E.2d 125, 130 (N.C. 2002) (recognizing

---

[3] Plaintiff has not responded to any defendant's argument regarding dismissal of her declaratory judgment claim.

15

the trial court has discretion "to decline a request for declaratory relief when (1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding").

### III.  CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are GRANTED IN PART and DENIED PART.  Plaintiff's claims for violations of the DCA/UDTPA to the extent based on defendants' conduct in the course of the foreclosure proceeding; fraud; breach of contract; negligent misrepresentation; CAA; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence based on anything other than a duty under the S.A.F.E. Act; and declaratory judgment are DISMISSED.  Plaintiff's claims for violations of the DCA/UDTPA to the extent the claim is based is based on defendants' conduct in attempting to collect on the 2006 and 2008 Loans and negligence to the extent the claim is based on a duty (duties) arising under the S.A.F.E. Act remain.

This 30 September 2016.

_____
W. Earl Britt
Senior U.S. District Judge